## Commonwealth ex rel. v. Keating

*Gregg & Gregg*, for petitioners.

COPELAND, P. J., July 18, 1932.—This case is before the court upon the petition of Ivry Neuman and Archie McEachern for a writ of habeas corpus directed to W. H. Humes, sheriff, requiring the said sheriff to bring the said Ivry Neuman and Archie McEachern before the court, together with the cause of the detention of each.

In obedience to the said writ, the said sheriff brought the bodies of the said petitioners before the court on July 18, 1932, and produced, as the cause of their detention, a commitment signed by F. J. Frederick, who is the tax collector of the Borough of New Kensington. The tax assessed against each is $5 school

tax. However, the tax collector did not personally deliver the bodies of the defendants to the county jail, but deputized F. J. Glass, acting as deputy tax collector, to perform that official act.

The said F. J. Frederick, tax collector, and the petitioners appeared before the court and testified touching the subject matter of the case. From the testimony of the witnesses it appears that at the last meeting of the school board of the Borough of New Kensington, in June, 1932, the tax collector requested the exoneration of the defendants and about two thousand other persons from the payment of school taxes, for the reason that such persons were without means to pay the same, and that, within a very short time, the school board refused to exonerate a great majority of the two thousand persons above mentioned, including the two defendants. From the testimony produced at the hearing, it is apparent that it would be impossible for the school board to make a proper and sufficient investigation of the financial condition of such a large number of taxables in so short a time; and that before refusing or granting such exoneration each of said taxables should be afforded an opportunity to present his request to the tax authorities. If, after careful investigation, the school board shall refuse any taxable—and not till then—the tax collector may commit such delinquent taxable to the county jail.

Section twenty-one of the Act of April 15, 1834, P. L. 509, provides as follows:

"If any person shall neglect or refuse to make payment of the amount due by him for such tax within thirty days from the time of demand so made, it shall be the duty of the collector aforesaid to levy such amount by distress and sale of the goods and chattels of such delinquent, giving ten days public notice of such sale, by written or printed advertisements and in case goods and chattels sufficient to satisfy the same with the costs cannot be found such collector shall be authorized to take the body of such delinquent, and convey him to the jail of the proper county there to remain until the amount of such tax together with the costs shall be paid or secured to be paid, or until he shall be otherwise discharged by due course of law."

The provisions of section twenty-one of the Act of 1834 were amended by the Act of April 22, 1931, P. L. 42.

"1. Tax collectors of a township or borough, elected or appointed by the court, collect not only the township and borough taxes, but also the school taxes for the district comprising the township or borough.

"2. Tax collectors have the right to make levy and distress upon the goods and chattels of a delinquent taxable, sell the same, and if taxes and costs are unsatisfied or if there be no such goods and chattels, then the taxable may be arrested and imprisoned until the taxes and costs are paid, or secured to be paid, or until otherwise discharged by due course of law:" Huber, Tax Collector, v. Weakland, 7 D. & C. 496.

"1. Under the Acts of April 15, 1834, P. L. 509, and May 8, 1923, P. L. 169, a woman may be committed to prison for non-payment of taxes, but such power is personal to the collector and cannot be delegated.

"2. The power to commit to prison cannot be exercised without prior effort to collect by levy and sale of property, and this prior effort must be expressly averred in the commitment:" Kolaski's Case, 6 D. & C. 446.

Thus it appears that a tax collector, who has a warrant from the proper municipal authorities, viz., school directors, for the collection of school taxes, or a warrant from the authorities of the borough or the supervisors of a township for the collection of borough taxes or road taxes, or a warrant from the county commissioners for the collection of county taxes, together with a list of

names of such taxables and the amount assessed against each, should proceed for the collection of said taxes as directed by the statute above quoted, viz.:

1. To make demand of the taxable for the payment thereof.

2. If such taxes are not paid within thirty days after such demand, to levy such amount by distress or sale of the goods and chattels of such delinquent taxable—giving ten days' notice by advertisement of such sale.

3. In case the goods and chattels are not sufficient to satisfy the same, such collector is authorized to convey the body of such delinquent to the county jail, there to remain until the said taxes, together with the costs, shall be paid, or until such delinquent taxable be otherwise discharged in due course of law.

In the instant case, it appears by the testimony that the tax collector did not proceed in the manner prescribed by the statute, and that, therefore, the defendants must be discharged.

In view of the apparent misunderstanding by the municipal authorities, the tax collector and the delinquent taxables of their respective rights and duties in relation to the collection of taxes, the court deems it proper to call to their attention their respective rights and duties.

In Com. ex rel. *v.* Everett et al., 16 D. & C. 316, 319, the Court of Common Pleas of Northumberland County pertinently said: "It will thus be seen that the court ought not to permit every delinquent taxpayer who refuses to pay his or her taxes to be discharged as an insolvent simply because he or she may not have property out of which his or her tax can be collected. If he or she is able-bodied, and is in receipt of wages, or if the husband of the woman is in a position where he ought to pay his wife's taxes in return for the work which she does in his household, there is no reason why she should be exempt from the payment of taxes. The law has given women the right to vote, and the great majority of women discharge their duty to help support the government, whether of the state or of the municipality, by paying taxes. In Broad Street Church's Appeal, 165 Pa. 475, Mr. Chief Justice Sterrett approves the following quotation from an opinion of Mr. Justice Brewer of the United States Supreme Court, as follows: 'Taxes proper, or general taxes, proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizens that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all.' It is unnecessary to amplify the matter further. In the present cases too little attention was given to testimony tending to bring out the specific ability of these parties to pay the taxes by reason of circumstances other than their own immediate possession of property. In the exercise of our discretion, therefore, we shall insist in future cases, if any arise, on being informed as to these matters. It also ought to be noticed that the municipal authorities have a right to exonerate the tax collector from the collection of taxes where they are satisfied that the party is unable to pay. They are better judges of the individual's circumstances than we are, and parties ought, before applying for the benefit of the insolvent laws, to appear before those authorities and ask to be exonerated from their payment. We apprehend that in the vast majority of cases the expenses incident to proceedings like the present ones will be greater than the amount of the taxes."

In order to avoid, in the future, the expense incident to hearings before the court of numerous applications for release by petition of persons for the non-payment of taxes, the court deems it proper to suggest that before committing a delinquent taxable to the jail, the tax collector should request the tax author-

ities to ascertain whether the delinquent taxable is unable to pay the said taxes, or whether he is able to pay but seeks to escape that burden.

The principle involved in this case is clearly stated in the opinion of the Supreme Court in the case of Davis's Appeal, 90 Pa. 131, 133, as follows:

"A person having little or no property, without the slightest inconvenience to himself, might procure his discharge under the insolvent laws; yet he might be in a position, by reason of his employment, social relations or otherwise, to be able to obtain the required security to comply with the order of the court. Under such circumstances, it seems reasonable that a person ought not to escape performance of his duty to support his wife and children, to prevent which I have no doubt was intended to be accomplished by the Act of 1869."

If such taxable does not have the money necessary for such payment and if he cannot obtain money for that purpose by the receipt of wages or otherwise, such taxable should be exonerated by the proper municipal authorities; and, at the proper time, the tax collector should be exonerated from collecting the same.

On the other hand, the delinquent taxable, if he is unable to pay such taxes, should make request of the municipal authorities to exonerate him from the payment thereof. Thus the delinquent taxable may call to the attention of the municipal authorities his financial circumstances.

"1. Imprisonment for nonpayment of taxes is constitutional and is authorized by the Act of May 4, 1927, P. L. 712, amending section twenty-one of the Act of April 15, 1834, P. L. 509, whether the delinquent be a man or woman. . . .

"3. The release from imprisonment of a delinquent taxpayer by the court of common pleas, under the Act of 1836, is discretionary, and the power should not be exercised where the delinquent is able to pay, although he may have no property out of which the tax can be collected; before passing upon an application for discharge, the court should inform itself as to petitioner's resources.

"4. Before applying for the benefit of the insolvency laws, a taxpayer should ask the municipal authorities to exonerate the collector from the collection of applicant's taxes on the ground of his inability to pay. . . .

"6. The release of an imprisoned delinquent taxpayer does not discharge his liability for the taxes:" Com. ex rel. v. Everett et al., 16 D. & C. 316.

The municipal authorities located in the same neighborhood as the delinquent taxable are better able than the court to ascertain the delinquent taxable's financial circumstances. Such delinquent taxable should appear before the proper municipal authorities and ask for exoneration from such taxes, and such municipal authorities should make a careful investigation thereof before granting or refusing such taxable exoneration.

If this plan were followed, the county would be protected from the payment of large sums of money incident to investigation of such matters before the court where witnesses must necessarily be summoned from points in the county far distant from the courthouse.

In the future, the court will expect that before a delinquent taxable is committed to jail for nonpayment of taxes, such municipal authorities shall have already made a proper investigation of such delinquent taxable's financial circumstances, and that they are of the opinion that such delinquent could pay such tax, but that without reasonable excuse he has refused so to do.

Moreover, after demand is made upon a taxable who considers that he is entitled by law to be exonerated from the payment of taxes assessed against him, he should promptly make application to the proper municipal authorities for exoneration from such payment.

The statute above quoted imposes important duties upon the tax collector—which duties he can discharge only by performance.

On the other hand, the tax collector has no authority to exonerate any taxable. He must first make demand upon the taxable for payment. If the demand is not complied with within thirty days, he should levy upon and sell the taxable's goods and chattels; and if the tax is not thus recovered, such tax collector is authorized to deliver the body of the delinquent taxable to the county jail.

Thus it is clear that the law imposes upon the municipal authorities, upon the tax collector, and upon the taxable, certain duties—the duties imposed upon each being different.

Before a taxable is delivered to the county jail for nonpayment of taxes, the law expects each of the parties above named to have performed all of his duties. If that course is followed in the future, Westmoreland County will be relieved from unnecessary expense—such as the fees of witnesses called from distant parts of the county and fees of officers who are required to subpoena such witnesses.

Finally, we say that the court is not to be understood as criticizing either the municipal authorities, the tax collector or the delinquent taxable who are concerned in the cases already heard by the court. Our only purpose is to suggest the course which the law requires each to pursue before a delinquent taxable is committed to jail, and before the court is asked to pass upon such taxable's request for discharge from imprisonment, after being committed to the county jail.

The statute which authorizes the commitment of the delinquent taxable to the county jail was enacted in 1834, and was reënacted in 1931. If this statute is deemed harsh or unjust, the remedy of the complainant is not by application to the court. The only duty and the only authority of the court is to enforce the statute reasonably and in a just manner.

The legislature of Pennsylvania, only, has authority to change the terms of the statute in question.

In view of the present financial depression through which we are passing and the consequential unemployment of millions of persons, who are able and anxious to work, but who are unable to secure employment, the municipal authorities should carefully investigate the financial circumstances of each applicant for exoneration from the payment of taxes, so that each shall receive exact justice.

The court suggests that the school board, town council, supervisors and county commissioners should sit at intervals at some public building, after public notice of the time, place and purpose of the meeting, and invite taxables who desire exemption to attend and present their claims.

### Decree

And now, July 18, 1932, after hearing the parties and their witnesses and after due consideration, it is ordered, adjudged and decreed that Ivry Neuman and Archie McEachern be discharged from imprisonment in the county jail to afford each of said taxables an opportunity to present his respective claim for exoneration to the proper tax authorities; and to afford such tax authorities an opportunity carefully to inquire and determine whether such taxables are unable to make payment of the taxes assessed against them, or whether such taxables are able to pay such taxes and are merely seeking to escape, without justification or excuse, the burden of taxation.

From William S. Rial, Greensburg, Pa.